UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

A. H. et al.,
        Plaintiffs,

    v.

Daniel M. French et al.,
        Defendants.

No. 2:20-cv-00151-cr

MOTION TO INTERVENE

Herbert G. Ogden, pro se, ("Intervenor") moves to intervene under F.R.C.P.
24(a)(1) because he has an interest in the transaction that is the subject of this action
and is so situated that disposing of the action may as a practical matter impair his
ability to protect that interest and because existing parties no longer adequately
represent that interest.  Alternatively, he moves for permission to intervene under
F.R.C.P. 24(b)(1)(B) because he has a claim that shares a question of law with the
main action.  As required by F.R.C.P. 24(c), a pleading filed herewith sets out the
claim for which intervention is sought.

MEMORANDUM

Background:

The Intervenor is a member of the school board of the Taconic and Green
Regional School District, which has served Manchester and Dorset, Vermont, and
seven nearby smaller towns since a merger in 2018.  Neither this district nor its
smaller predecessors operate or operated any schools for grades 9 through 12.  Instead,
they pay tuition as required by 16 V.S.A. § 822(b), which says "a school district that is
organized to provide kindergarten through grade 12 and maintains a program of
education for only the first eight years of compulsory school attendance shall be

obligated to pay tuition for its resident students for at least four additional years." In 2021, 85% of these students attended the nonpublic Burr and Burton Academy in Manchester, 6% attended the nonpublic Long Trail School in Dorset, 5% attended other nonpublic schools in and outside Vermont, and 4% attended public high schools outside the District.

The Intervenor represents no one but himself and does not speak for any school board. He supports religion and religious education. These facts appear in his appended affidavit.

The plaintiffs allege that the defendants' denials or disapproval of their requests for tuition funding violated their rights to the free exercise of religion under the First Amendment. Before the U. S. Supreme Court decided Carson v. Makin, 596 U.S. ___, 142 S. Ct. 1987 (2022), the defendants correctly asserted that the Compelled Support Clause in Ch. 1, Art. 3 of the Vermont Constitution, as interpreted in Chittenden Town School Dist. v. Dept. of Education, 169 Vt. 310, 738 A.2d 539, 541-42 (1999) forbade paying this tuition "in the absence of adequate safeguards against the use of such funds for religious worship," and that the Vermont Supreme Court had further held that religious worship included religious education.

Now, however, the defendants have stipulated that Carson "renders Vermont's adequate safeguards requirement unconstitutional." Proposed Stipulated Judgment, ECF 73 (9 Sept. 2022) and ECF 77-1 (18 Oct. 2022), ¶ 6. They have asked the Court to so declare, simply because they have stipulated.[1] In other words, they have urged the Court to declare that the adequate safeguards required by the Compelled Support

---

[1] The sentence added after ¶ 7 in the 18 October version does not avoid the problem, because the parties are still asking the Court to sign the entire Stipulated Judgment, not just the part following the added sentence. Thus, the parties are still asking the Court to issue a sort of advisory opinion on an issue that they have not litigated. This is explicit in ¶¶ 6 and 7. It is implicit in ¶¶ 8 and 9 to the extent they rest on the idea that the only way to enforce "adequate safeguards" is the way the defendants were enforcing them pre-Carson.

Clause of the Vermont Constitution conflict with the United States Constitution not because the Court has analyzed the issue and agrees with them, but merely because they have agreed amongst themselves.  For reasons detailed below, the Intervenor believes the constitutions do not conflict, however.

The stipulated judgment would impair the Intervenor's ability to protect his interest.

The change in the defendants' position impairs the proposed intervenor's ability to protect his interest as a school board member who has sworn the oath required by Chapter Two, Art. 56 of the Vermont Constitution: "You _____ do solemnly swear (or affirm) that you will be true and faithful to the State of Vermont, and that you will not, directly or indirectly, do any act or thing injurious to the Constitution or Government thereof."[2]  The Chittenden decision says the Compelled Support Clause requires adequate safeguards against using public money for religious instruction.  The plaintiffs said the safeguards requirement violated the U. S. Constitution.  The defendants now agree.  The defendants' behavior since Carson is rather like the behavior of someone who has minimized headaches by taking a certain drug for years but, once the drug has been forbidden by the FDA, has decided to put up with the headaches rather than try a different drug.  Having pinned all their hopes on pre-Carson constitutional law, the defendants have not only declined to defend the "adequate safeguards" but also have agreed they are unconstitutional.

No court has said whether Vermont's constitutional safeguards violate the U. S. Constitution.  The only thing that is clear is that Carson has broadened the Free Exercise Clause of the First Amendment in a way that may affect them.

---

[2]Under 16 V.S.A. § 561(a), "School board members shall be sworn before entering upon the duties of their office."  Under 1 V.S.A. § 137, "'Sworn' when applied to public officers required by the constitution to take certain oaths shall refer to those oaths; when applied to other officers, it shall mean sworn to the faithful discharge of the duties of their offices before a person authorized to administer oaths."

Until a court evaluates the safeguards, the Intervenor does not know whether

- his oath requires him to vote against giving public tuition to nonpublic schools that use it for religious instruction,

- his oath requires him to vote against giving public tuition to any nonpublic school as the only way of avoiding giving it to schools that use it for religious instruction, or

- he is relieved of his oath as it affects giving public money to nonpublic schools.

The Intervenor's interest will be harmed if "adequate safeguards" after Carson still forbid paying public money to schools for religious instruction while not violating the U. S. Constitution, as suggested infra p. 11, and he nevertheless votes to pay public money to one or more such schools.  This vote would violate his oath.

The Intervenor's interest will be harmed if "adequate safeguards" after Carson forbid paying public money to any nonpublic school, as suggested infra pp. 8-10 , and he nevertheless votes to pay public money to one or more nonpublic schools.  This vote would violate his oath.

The Intervenor's interest will also be harmed if no "adequate safeguards" remain after Carson, so that public money must be paid to schools for religious instruction, and he nevertheless votes against either paying public money to schools for religious instruction or paying public money to all nonpublic schools as the only remaining way of avoiding paying public money to a nonpublic school that uses it for religious instruction.  This vote would violate 16 V.S.A. § 822(b), which says "a school district that is organized to provide kindergarten through grade 12 and maintains a program of education for only the first eight years of compulsory school attendance shall be obligated to pay tuition for its resident students for at least four additional years."  (Before Carson, the Secretary of Education apparently believed that payment under this statute was limited by "adequate safeguards" against paying tuition used for

religious instruction.)

Depending on the answer to these questions, the Intervenor may have a duty to vote to ask his District's electorate to use 16 V.S.A. § 827 to convert one or more of the nonpublic schools described above into its public schools and thus avoid the requirement in 16 V.S.A. § 822(b) altogether.  This option is described infra p. 10.

The problem is real, not hypothetical.  The school district has been asked to pay tuition an approved nonpublic school that will use public money to conduct religious instruction.  See Intervenor's Affidavit following this memorandum.  The guidance that the Secretary of Education has issued, as required by the settlement, Exh. 1, says the district must pay this tuition to any approved school.  If the Intervenor follows this guidance, he will vote to pay tuition to this school.  Nevertheless, unless the Court decides the constitutional issue in favor of the plaintiffs, the Intervenor will violate his oath not to " do any act or thing injurious to the Constitution" of Vermont if he votes that his school district pay this tuition to this school.  (The Intervenor has not found authority relieving someone of an oath of office to whatever extent obeying the oath would require the officer to violate the federal constitution, but this would be seem to be the result under the Supremacy Clause of the federal constitution if action were taken against the officer for breaching his oath.)

Reason and his oath compel the Intervenor to argue that adequate safeguards do not conflict with the First Amendment because Carson does not forbid the past application of safeguards and because both the safeguards and the federal constitution can be obeyed if public tuition is paid only to public schools.  His arguments are detailed below.  The Court can tell him whether he is right.  If, however, the Court does not decide the constitutional issue on its merits, the Intervenor will remain in a sort of legal limbo, risking violating his oath no matter what he does.

If the Intervenor follows the Secretary's guidance and it is wrong, he may commit a crime by violating his oath of office. 13 V.S.A. § 2904(a) says "A person of whom an oath is required by law, who willfully swears falsely in regard to any matter or thing respecting which such oath is required, shall be guilty of perjury and punished as provided in section 2901 of this title."[3] Perhaps this is limited to oaths sworn in a judicial style proceeding. Probably the statute is not limited to conduct in court, however. The statute on Listers' oaths may state the general rule about what officeholders swear to do: If Listers violate their oath to appraise all property fairly, "they shall each be guilty of perjury and punished accordingly." 32 V.S.A. § 3431(b).

Violating an oath of office can have non-criminal consequences also. If officeholders violate their oath of office, courts in some states may declare the office vacant. 63C Am. Jur. 2d Public Officers and Employees § 117 (1997 & Supp. 2007). The Intervenor has found no Vermont cases on officeholders in general, but at least one Vermont office becomes vacant when the holder violates the oath: lawyers can be disbarred for violating their oaths of office. See In re Goodrich, 111 Vt. 256, 11 A.2d 325 (1940). If violating their oath of office makes school board members vacate their seats, an entire board that votes to pay tuition to a school in violation of the Vermont Constitution can be eliminated.[4]

---

[3] "A person who, being lawfully required to depose the truth in a proceeding in a court of justice or in a contested case before a State agency pursuant to 3 V.S.A. chapter 25, commits perjury shall be imprisoned not more than 15 years or fined not more than $10,000.00, or both." 13 V.S.A. § 2901.

[4] If the "adequate safeguards" are constitutional, a vote to violate them could also subject the District to a taxpayer's suit. A municipal taxpayer has standing to sue under the Compelled Support Clause for not only for a direct loss to the taxpayer but also for wasting municipal assets. Taylor v. Town of Cabot, 2017 VT 92, 178 A.3d 313,317. Any taxpayer in the District therefore could ask a court to order the District to withhold payments to all nonpublic schools, to avoid paying those that used at least part of tuition to fund religious education. As Justice Johnson said in her concurring opinion in Chittenden, 738 A.2d at 565, "The language of the Compelled Support Clause, on its face, bars the state from taxing citizens for the support of religion." If the taxpayer won and the District nevertheless paid the tuition, the District could face substantial penalties for contempt of court.

Adequate guidelines do not violate the First Amendment.

On account of his oath to "not, directly or indirectly, do any act or thing injurious to the Constitution" of Vermont, the proposed intervenor believes that, if he intervenes, he is obliged to argue that the state and federal constitutions do not conflict and that the adequate guidelines derived from the Compelled Support Clause must be enforced despite the defendants' changed position. He also believes this argument is correct.

The Court should not issue the order that the present parties have requested, for two reasons. The first is partly procedural and partly constitutional. The second is simpler and entirely constitutional.

First, the parties' stipulation is not a sufficient basis for any finding of law, let alone a finding of unconstitutionality. It goes beyond what even the plaintiffs originally requested: Their Amended Complaint prays that "this Court enter a declaratory judgment declaring that Defendants' application of the Vermont Constitution's Compelled Support Clause violates the First and Fourteenth Amendments of the United States Constitution ...." (Emphasis added.) This is not the same as the presently requested judgment that "[t]he U. S. Supreme Court's Carson decision renders Vermont's adequate safeguards requirement unconstitutional," which would bar all applications of "adequate safeguards," not just the one the defendants used before Carson. If the parties want such a broad judgment, the plaintiffs can file a new motion for summary judgment claiming that Vermont's "adequate safeguards" violate the First Amendment not only as the defendants applied them before Carson but also under all circumstances. The Intervenor hopes the defendants will oppose it for the reasons stated infra p. 11. If they do not, and he is allowed to intervene, he will. Then the Court will reach its own decision regardless of any stipulation about the law.

Second, even if the defendants' new theory is correct, the safeguards required by Vermont's Compelled Support Clause can be applied so that they do not conflict with the federal constitution.  As shown below, there is a reasonable way to apply the safeguards while doing what Carson requires, harmonizing Vermont's Compelled Support Clause with the federal Free Exercise Clause.  When deciding whether laws or constitutions conflict, courts harmonize them whenever possible.  As this Court held in its order partially granting defendant French's Motion to Dismiss, ECF 40 at 27-28,

> Because Plaintiffs assert no facial challenge to the Compelled Support Clause of the Vermont Constitution, where possible, the court must harmonize the dictates of Vermont and federal law. See Planned Parenthood Ass'n of Kansas City, Mo., Inc. v. Ashcroft , 462 U.S. 476, 493, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983) (holding that "[w]here fairly possible, courts should construe a statute to avoid a danger of unconstitutionality"); Causeway Med. Suite v. Ieyoub , 109 F.3d 1096, 1107 (5th Cir. 1997) (holding that when "consider[ing] the constitutionality of state [laws]," the court should be "mindful of the principle that [it] should avoid 'federal-court nullification of state law,' ") (quoting Leavitt v. Jane L. , 518 U.S. 137, 145, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996) ). Federal law, however, remains the supreme law of the land. See Testa v. Katt , 330 U.S. 386, 391, 67 S.Ct. 810, 91 L.Ed. 967 (1947) (holding that "the Constitution and the laws passed pursuant to it are the supreme laws of the land").

Likewise, in Hellar v. Cenarrusa, 106 Idaho 571, 682 P.2d 524,528 (1984), regarding reapportionment plans, the court said "we reject respondents' argument that a plan cannot be devised which complies with both the state and federal constitutions because we find that Plan 14-B is in fact in harmony with both constitutions."  In Doggett v. Town of North Hampton Zoning Bd. of Adjustment, 138 N.H. 744, 645 A.2d 673,676 (1994), the court applied a similar precept to two supposedly conflicting statutes.  If they conflicted, a third statue with a catchall rule on the period of limitation would apply.  The court held that, because "[a] person can ... obey both rules without conflict," resort to the catchall statute was unnecessary.

The state and federal constitutions harmonize on the tuition issue.  Vermont's adequate safeguards requirement based on the Compelled Support Clause can be

enforced simply by paying public money only to public schools. While paragraph 7 of the proposed judgment says 'The Supreme Court's Carson decision prohibits the enforcement of the adequate safeguards standard to deny payment of tuition to independent schools based on their religious status, affiliation, beliefs, exercise, or activities," this decision applies only when public money is paid as tuition to nonpublic schools. States remain free to deny payment of tuition to nonpublic schools as long as they deny it to all nonpublic schools, not merely those that use it for religious purposes. "'A State need not subsidize private education,' we concluded, '[b]ut once a State decides to do so, it cannot disqualify some private schools solely because they are religious.'" Carson, slip op. at 8, quoting Espinoza v. Montana Department of Revenue, slip op. at 9, 591 U.S. ___ (2020). Therefore, as stated in the majority opinion in Carson, slip op. at 14, "The dissents are wrong to say that under our decision today Maine 'must' fund religious education."

The plaintiffs implicitly recognized this in their Motion for Summary Judgment, ECF 52-1 at 4, stating "The adequate safeguards requirement unconstitutionally forces families and schools to choose between a benefit and their faith." The benefit was tuition to a nonpublic school. If a school district pays tuition only to public schools, the benefit described by the plaintiffs does not exist in the first place. The First Amendment issue disappears if the benefit disappears. As Justice Sotomayor noted in her Carson dissent, slip op. at 4, "Maine must choose between giving subsidies to its residents or refraining from financing religious teaching and practices."

The plaintiffs may reply that paying public money only for the present public schools is impractical in some parts of the state where nonpublic schools have long served as a school district's main high school. This is true, but it is irrelevant. There is no requirement that, in harmonizing constitutions or statutes, courts must

9

determine how practical the harmonizing solution is.  Furthermore, there are at least two ways to make harmonizing easier.  One is for these school districts to convert a nonpublic high school into a public high school under 16 V.S.A. § 827.[5]  Justice Sotomayor suggested something like this in her Carson dissent, slip op. at 4-5: "The Court's analysis does leave some options open to Maine. For example, under state law, school administrative units (SAUs) that cannot feasibly operate their own schools may contract directly with a public school in another SAU, or with an approved private school, to educate their students."  The Carson majority, slip op. at 2, is also hints at a solution when a district "contracts with a particular public or private school for the education of its school-age children."  Another way to harmonize, which the Intervenor does not support but has been mentioned by members of the legislature, is to expropriate the nonpublic high schools and put them into public ownership.  Other practical solutions may also exist.

---

[5]Designation under 16 V.S.A. § 827 would avoid the situation described in Carson, slip op. at 2, 142 S. Ct. 1987: "Parents who wish to take advantage of this benefit first select the school they wish their child to attend. Ibid. If they select a private school that has been 'approved' by the Maine Department of Education, the parents' SAU 'shall pay the tuition' at the chosen school up to a specified maximum rate."  Under 16 V.S.A. § 827, the school district, not the parents, decides which school or schools its students would attend.  The "terms and conditions" allowed by § 827 let local school boards take into account important factors like the quality of the curriculum, compliance with state and federal anti-discrimination laws, and giving students and staff the basic constitutional protections guaranteed in public schools The designation and "terms and conditions" allowed under 16 V.S.A. § 827 avoid the defect alleged in the plaintiffs' Motion for Summary Judgment at 22, ECF 52-1: "Vermont's Program does not contract with private schools to provide a secular education."  Designation could avoid other problems described in Carson, slip op. at 3: "Parents may direct tuition payments to schools inside or outside the State, or even in foreign countries. §§2951(3), 5808. In schools that qualify for the program because they are accredited, teachers need not be certified by the State, §13003(3), and Maine's curricular requirements do not apply, §2901(2). Single-sex schools are eligible."  The Carson majority emphasized the curriculum problem: "Moreover, the curriculum taught at participating private schools need not even resemble that taught in the Maine public schools."  Carson, slip op. at 12.  The Supreme Court therefore rejected the argument that tuition paid to nonpublic schools in Maine was funding for the "rough equivalent of the public school education that Maine may permissibly require to be secular."  Id. at 11.

Even as applied by the defendants before Carson, adequate safeguards do not violate the First Amendment.

In paragraphs 4 - 7 of the proposed "Stipulated Judgment," the Court is asked to rule that the "adequate safeguards" required by Vermont's Compelled Support Clause are unconstitutional because the Carson court held that Maine's "anti-establishment" interest was insufficient to support denial of tuition for schools that used it for religious instruction. This wrongly assumes that the Compelled Support Clause is an "anti-establishment" clause aimed simply at maintaining separation of church and state. Examination of the language and history of the Compelled Support Clause makes clear that it is at its core a "free exercise" clause, the primary purpose of which is to protect the free exercise of religion. The Compelled Support Clause has deep roots. It was one of the first provisions to be invoked as grounds for declaring statutes adopted by the legislature unconstitutional, leading to repeal of the Ministerial Acts in the late 1700s and early 1800s. The fact that Vermont prohibits compelled support of religious indoctrination as a matter of constitutional law distinguishes the Vermont situation from that involved in the Maine case, where there was no such constitutional limitation on tuition. Maine's "new requirement that any school receiving tuition assistance payments must be 'a nonsectarian school in accordance with the First Amendment of the United States Constitution'" was added only in 1981 and is purely statutory. Carson, slip op. at 3.

Vermont's Compelled Support Clause reflects a simple constitutional proposition: the free exercise of religion includes the freedom from having to support with one's tax dollars the propagation of religious views with which one disagrees. Whether the free exercise interest in the Compelled Support Clause is entitled to more weight, and subject to different analysis, than the "anti-establishment" interest asserted by Maine in Carson is an important constitutional question not addressed or

resolved by the decision in that case.  References to Carson in paragraphs 4 and 5 of the proposed Stipulated Judgment therefore fail to lay sufficient basis for the conclusions in paragraphs 6 and 7.

Intervention is timely and will not unduly delay or prejudice adjudication of the original parties' rights.

This motion is timely.  The parties' stipulation of 9 September came to the Intervenor's attention on 21 September when he read an article in Vt. Digger.  He then read a transcript of the conference on 22 September.  The Court's comments and Atty. Schmitt's statement that "it would make sense … probably for us to reevaluate the agreement the agreement with defendants and see if we can figure something out to go forward," ECF 76 (Tr.) at 8-9, led the Intervenor to await a new stipulation.  He hoped for one that merely ordered the parties to do certain things, leaving his District free to obey the Compelled Support Clause and apply adequate safeguards, so it would not affect his interests.  Not until 18 October, when the parties filed a Stipulated Judgment that merely added a sentence after ¶ 7 but still called for the Court to sign the whole document, did the Intervenor know that his waiting had been futile.

Intervention will not delay the proceeding.  The parties are responsible for the delay after the plaintiffs moved for summary judgment on 21 September 2021.  While a stay made sense while Carson v. Makin was pending in the Supreme Court, that case was decided in June.  If the parties wanted a judgment on the constitutional issue that is presented in the Stipulated Judgment, the plaintiffs then should have moved for a summary judgment that Vermont's "adequate safeguards" conflicted with the First Amendment in all possible applications, not just as applied by the defendants before Carson.  Now it seems up to the Intervenor to expedite adjudication of the original parties' rights so he will know what his oath of office requires him to do.

Mount Tabor, Vermont, 25 October 2022

/s/ Herbert G. Ogden
Herbert G. Ogden, Esq.
Pro Se

## INTERVENOR'S AFFIDAVIT

I swear the following is true to the best of my personal knowledge:

1.  In March 2020, I was re-elected to a three year term as a member of the school board of the Taconic and Green Regional School District.

2.  I took the required oath: ""You, Herbert Ogden, do solemnly swear (or affirm) that you will be true and faithful to the State of Vermont, and that you will not, directly or indirectly, do any act or thing injurious to the Constitution or Government thereof."

3.  The Taconic and Green Regional School District has served Manchester and Dorset, Vermont, and seven nearby towns since a merger in 2018.  Neither this district nor its smaller predecessors operate or operated any schools for grades 9 through 12.  Instead, they pay tuition to public and nonpublic high schools as required by 16 V.S.A. § 822(b).

4.  Grace Christian School in Bennington, which has said its curriculum is 100% religious, has asked my school district to pay tuition for some high school students residing in the district.

5.  The Secretary of Education has sent the attached letter, Exh. 1, to Superintendents.

6.  The parties' stipulation of 9 September came to my attention on 21 September when I read an online article in Vt. Digger.  I then read a transcript of the conference on 22 September.

7.  All the other facts stated in the above memorandum are true to the best of my information and belief.

8.     I support religion and religious education.  I was President of the Unitarian
       Universalist Church of Rutland from 2000 - 2003 and 2016 - 2020.

6.     I move to intervene because I took an oath as a school board member, but I do
       not represent anyone but myself and do not speak for any school board.

/s/ Herbert G. Ogden

Herbert G. Ogden

Sworn to and subscribed before me this 25th day of October 2022.

/s/ William G. Basso II

Notary Public
My commission expires
on Jan. 31, 2023